UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 06-301 |
| LOUIS JOHNSON, ET AL. | SECTION: "K"(5) |

**MEMORANDUM AND ORDER**

Before the Court is Defendant Louis Johnson's Motion to Suppress Wiretaps. (Rec. Doc. 125) ("Mot."). The Government has filed an opposition to the Defendant's motion. (Rec. Doc. 157) ("Opp."). Having reviewed the submitted briefs, the affidavits and exhibits, and the relevant law in this matter, this Court determines that the Plaintiff's motion should be denied for the reasons provided herein.

**I. BACKGROUND**

This case arises out of the Government's wiretapping operation of the Defendant. On September 27, 2006, United States District Judge Sarah S. Vance authorized an application for a Title III wiretap on the Defendant's cellular telephone to intercept communications concerning the operation of narcotics distribution, identities and roles of the accomplices and other conspirators in the distribution network, the existence of financial records and financial resources, proceeds from the illegal activities, and locations and items used in furtherance of the illegal activities. Order Authorizing Wiretap (Sept. 22, 2006) ("Auth. Order"), Opp., Ex. A at 44; Affidavit of Special Agent Brownlie (Sept. 27, 2006) ("Affidavit") ¶ 13, Opp., Ex. A. at 17. The application for wiretap was obtained following two controlled purchases of a total of six

1

ounces crack cocaine from the Defendant by a confidential source.  Affidavit ¶¶ 34, 40, Opp., Ex. A at 14, 16.

To ensure that the DEA Special Agents, Task Force Monitors, and contracted Title III monitors complied with minimization requirements and techniques required by Title III and Judge Vance's authorization, the monitors were instructed on the minimization requirements and also received a seven page memorandum on the techniques.  *See* DEA Report of Investigation, Opp., Ex. B; Minimization Memorandum, Opp., Ex. C.  The seven page instructional memorandum was signed by Assistant United States Attorney, Kevin Boitmann.  *See* Opp., Ex. C.  Furthermore, upon reading the memorandum, the other agents were required to sign the accompanying sign up sheet to ensure that they had read the contents of the minimization requirements.  Opp., Ex. C.

The wiretap commenced on September 28, 2006 and on October 6, 2006, the ninth day of the wiretap, agents intercepted a conversation between the Defendant and co-defendant, Trevor Jeffery.  The two discussed killing another individual.  Based upon that intercepted conversation the agents obtained an arrest warrant for the Defendant and Jeffery, along with a search warrant for the residence, on October 7, 2006, at 12:30 a.m. from United States Magistrate Judge Joseph Wilkinson.  Opp. at 2-3.

The agents arrested the Defendant and upon searching his residence found more than 300 grams of crack and 1500 grams of powder in the bedroom closet.  Opp. at 3.  An assault rifle and a handgun were also found.  *Id.*  After being advised of his *Miranda* rights, the Defendant gave statements that the drugs and the guns belonged to him.  *Id.*  He further admitted to agents his involvement in the drug trafficking and taking part in drug trafficking operations that had been

intercepted by the wiretap communications. *Id.* The Defendant also stated that he had been sold false cocaine while in Baton Rouge and was planning to go back that night or the next to kill the person responsible. *Id.* The Defendant and Jeffery were indicted on October 19, 2006. A superseding indictment, adding other co-defendants, was returned on March 15, 2007. *Id.*

The Defendant seeks suppression specifically on the following bases. First, the Defendant alleges that the Department of Justice's ("DOJ") order approving the wiretap does not identify the "appropriate individual" who is "designated by the Attorney General" to approve the order. Mot. at 4. He also claims that the wiretap application is insufficient because a memorandum attached to the application that granted approval was from Assistant Attorney General Alice S. Fisher, but the memorandum instead was signed by Deputy Assistant Attorney General Barry Sabin. Mot. at 4. He notes under this point that Deputy Assistant Attorney General Sabin's signature "provides no information or assurance that he has reviewed the case." Mot. at 5. The Defendant claims that the warrant granting permission to wiretap was not supported by probable cause, noting that the affidavit by Special Agent M. Scott Brownlie was "impermissibly vague" in describing the basis for probable cause. Mot. at 5-6. The Defendant asserts that the Government did not properly consider other, less-intrusive surveillance techniques. Mot. at 11-12. The Defendant lastly claims that the agents performing the wiretap monitoring did not properly use minimization techniques, thus capturing conversations that were not the target of the wiretap order. Mot. 7-11.

## II. ANALYSIS

The Defendant moves to suppress these wiretaps, a permissible remedy under Title 18 U.S.C. § 2518(10)(a), which states:

> Any aggrieved person in any trial, hearing, or proceeding . . . may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived thereof, on the grounds that –
>
> **(i)** the communication was unlawfully intercepted;
>
> **(ii)** the order of authorization or approval under which it was intercepted is insufficient on its face; or
>
> **(iii)** the interception was not made in conformity with the order of authorization or approval.

18 U.S.C. § 2518(10)(a). There appears no dispute that the Defendant is an "aggrieved person," and therefore has standing.

"It is well established that the burdens of production and persuasion generally rest upon the movant in a suppression hearing." *United States v. de la Fuente,* 548 F.2d 528, 533 (5th Cir. 1977) (citations omitted). In "some well-defined' situations the ultimate burden of persuasion may shift to the government upon an initial showing of certain facts by the defendant. *Id.* "[D]efendants must at least allege particular facts which would tend to indicate some government impropriety," and "general, conclusory allegations based upon mere suspicions do not entitle a defendant to have evidence suppressed." *Id.* (citations omitted).

**A.    Alleged Failure to Obtain Necessary Authorization from a Person Designated by the Attorney General**

The Defendant contends that the Government failed to obtain proper authorization for the wiretap application, and therefore, according to 18 U.S.C. § 2518(10)(a)(I) the communication

4

was unlawfully intercepted and must be suppressed.

Under the 18 U.S.C. § 2516(1):

> The Attorney General, Deputy Attorney General, Associate Attorney General, or any Assistant Attorney General, any acting Assistant Attorney General, or any Deputy Assistant Attorney General or acting Deputy Assistant Attorney General in the Criminal Division or National Security Division specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made . . . .

18 U.S.C. § 2516(1). The Defendant contends that neither AAG Fischer nor DAAG Sabin were authorized to make an application for wiretaps. The Defendant argues that, because the memorandum attached to the application is by Alice S. Fischer, the Assistant Attorney General (AAG), but is signed by Barry Sabin, the Deputy Assistant Attorney General (DAAG), the Government failed to obtain proper approval as per 18 U.S.C. § 2516 and accordingly the information must be suppressed under 18 U.S.C. § 2518(10)(a)(I). Thus, the Defendant's claim on this point appears to be simply summed up as asserting that DAAG Barry Sabin was not designated representative of the Attorney General for approving wiretaps.

However, former Attorney General Alberto Gonzalez's Order No. 2578-2005, effective February 24, 2005, states in pertinent part that:

> I hereby specially designate the Assistant Attorney General in charge of the Criminal Division, *any Acting Assistant Attorney General* in charge of the Criminal Division, *any Deputy Assistant Attorney General* of the Criminal Division . . . to exercise the power conferred by Section 2516(1) of Title 18, United States Code, to authorize applications to a Federal judge of competent jurisdiction for orders authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation or a Federal agency having responsibility for the investigation of the offense(s) as to which such application is made . . . .

Attorney General Order No. 2758-2005, Feb. 24, 2005, Opp., Ex. A. at 10 (emphasis added). This Order clearly appears to include both AAG Fischer and DAAG Sabin as designated persons to authorize wiretaps. The Defendant heavily relies on *United States v. Giordano*, 416 U.S. 505 (1974), to support his position that a failure to properly obtain approval requires suppression of any wire intercepts. However, unlike *Giordano*, in the present case there has been an approval made by a person who has been designated by the Attorney General to review and authorize wiretap applications. Therefore, this ground for suppression must be denied.

**B. Alleged Failure to Properly Identify the Individual Authorizing the Application**

The Defendant also argues that because the authorization was from AAG Fischer but was signed with a stamp signature by DAAG Sabin, the authorization requirement has still been violated because there was a misidentification on the application. This proposition finds no support in law. Indeed, in *United States v. Chavez*, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974), the Supreme Court held that, where a wiretap application misidentified the Department of Justice official approving the wiretap, the wiretap should not be suppressed as long as the person who actually did approve it was authorized to do so. *Id.* at 568-69; 94 S.Ct. 1853.

Here, the Government has presented the Department of Justice memorandum authorizing the wiretap on the Defendant. The memorandum states that it is from Alice Fisher, Assistant Attorney General for the Criminal Division. Dep't of Justice Authorization Memorandum ("Auth. Memo"), Opp., Ex. A at 9. At the end of the memorandum, it lists her name and

6

position under the signature line. *Id.* at 10. However, AAG Fisher did not sign the authorization order. Instead, Barry Sabin signed below her signature line, with a stamp below his signature identifying him as Deputy Assistant Attorney General, Criminal Division. *Id.* As established earlier in this opinion, both AAG Fisher and DAAG Sabin were designated by the Attorney General to authorize wiretap applications. The fact that DAAG Sabin's signature, and not AAG Fischer's signature, was affixed to the memorandum is not enough to suggest that the application is insufficient. Consistent with *Chavez*, there is no doubt that the official authorizing this wiretap application had the power to do so, even if it was not the precise official who drafted the original authorization memorandum. The application does identify who approved it, DAAG Sabin, and he is a designated authorizing individual, and that is enough to satisfy 18 U.S.C. § 2516(1). Therefore, this point of error is meritless.

Defendant also asserts that the mere signature of DAAG Sabin provides "no information or assurance that [he] has reviewed the case, that he is indeed the one responsible for the case or that [he] has authorized the application." Mot. at 5. This abecedarian allegation contains no factual basis whatsoever upon which this Court could act, and consequently the Defendant cannot carry his burden. *See De la Fuente,* 548 F.2d at 533 (requiring the defendant "allege particular facts which would tend to indicate some government impropriety" in order to suppress evidence). Thus, this ground for suppression will also be denied.

**C.  Probable Cause for the Wiretap**

As per 18 U.S.C. § 2518(3) a judge may approve and authorize wiretapping if:

(a)  there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in

7

>    section 2516 of this chapter;
>
> (b) there is probable cause for belief that particular communications concerning the offense will be obtained through such interception;
>
> (c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;
>
> (d) except as provided in subsection (11), there is probable cause for belief that the facilities from which, or the place where, the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

18 U.S.C. § 2518(3). Probable cause is a "practical, nontechnical conception" that embodies the "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act." *Illinois v. Gates*, 462 U.S. 213, 231,103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), *citing Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). Determining probable cause rests on a "fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232, 103 S.Ct. at 2329. The Supreme Court has renounced any rigid test for probable cause, instead applying a "totality-of-the-circumstances approach." *Id.* at 230, 103 S.Ct. at 2328. Probable cause determinations by the judge issuing the warrant are "conclusive in the absence of arbitrariness" and are entitled to "great deference," but the reviewing court must "ensure [that the issuing judge] had a substantial basis for concluding that probable cause existed." *United States v. Gonzales*, 866 F.2d 781, 786 (5th Cir. 1986).

In *United States v. Gonzales,* 866 F.2d 781 (5th Cir. 1986), the Fifth Circuit affirmed a district judge's order that probable cause existed to issue a warrant to wiretap the defendants. The court explained that the district judge approved the wiretap where three confidential

informants had affirmed that they had either discussed purchasing drugs with the defendant or actually purchased drugs from him. *Id.* at 786. Moreover, pen registers placed on the defendant's phone line had shown that phone calls were being made from his residence to known drug dealers. *Id.* at 787. This amounted to sufficient probable cause to place the wiretap.

Here, was enough information in the application here to find probable cause. The affidavit by Special Agent Brownlie asserted that a confidential source ("CS") had personally received six ounces of crack from Defendant Louis Johnson on two different occasions, and that the Defendant was believed to be "the leader of an organization that distributes multiple kilograms of Cocaine Base (Crack) in St. John Parish." Affidavit ¶ 18, Opp., Ex. A at 19. The purchases had been recorded consensually by the CS, and the details of those two purchases were included in the affidavit. Affidavit ¶¶ 39-49, Opp., Ex. A at 24-30. The CS had received information on the street that the Defendant and others had traveled to Houston in February 2006 to obtain approximately five kilograms of cocaine. Affidavit ¶ 26, Opp., Ex. A at 23. Special Agent Brownlie confirmed the CS's information in conversations with another detective who had personally spoken with a person who had worked as the Defendant's "cook," i.e., a person who converts cocaine into crack. Affidavit ¶¶ 26-27, Opp., Ex. A at 22-23. Special Agent Brownlie also personally affirmed that the CS had previously provided reliable, truthful information to special agents that have led to numerous purchases, arrests, and indictments. Affidavit ¶ 28, Opp., Ex. A at 23-24. Finally, Special Agent Brownlie asserted that a pen register placed on the Defendant's phone line revealed that calls had been made to persons who were known to be engaged in drug trafficking. Affidavit ¶¶ 50-53, Opp., Ex. A at 31-32. This Court finds that this information is ample for establishing probable cause. Much as in *Gonzales*,

a reliable CS has provided personal knowledge of drug deals with the Defendant, the CS's information has been confirmed through other persons involved with the Defendant, and a pen register has also confirmed that the Defendant is likely engaged in drug dealing. Judge Vance was certainly not in error in finding probable cause, even without the deferential standard that this Court is bound to apply.

### D. Availability of Less Intrusive Means

Under 18 U.S.C. § 2518(3), a wiretap application may be granted only if the judge determines that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518()3)(c). The Defendant contends that the Government did not exhaust all other options before applying for a wiretap. According to 18 U.S.C. § 2518(1)(c), each application for wiretaps must show a "full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c).

The Fifth Circuit has decreed that "the proponent of the [wiretap] application need not establish that 'every other imaginable mode of investigation would be unsuccessful.'" *United States v. Guerra-Marez,* 928 F.2d 665, 670 (5th Cir. 1991), *citing United States v. Diadone*, 558 F.2d 775, 778 (5th Cir. 1977). Instead, courts must take a "common sense" view to determine whether the requirement of the necessity to wiretap has been satisfied. *Id.*

In *United States v. Bankston*, 182 F.3d 296 (5th Cir. 1999), *rev'd on other grounds sub nom. Cleveland v. United States*, 531 U.S. 12, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000), the Fifth

Circuit addressed the necessity requirement in a case concerning criminal activity in the Louisiana video poker industry. The Fifth Circuit affirmed the necessity of the wiretap order where the FBI had asserted in the application that the government's informant would not be included "in any potentially incriminating conversations with third parties." *Id.* at 306. The court noted that it had affirmed wiretap orders in similar cases where "informants or undercover agents could not infiltrate [a] conspiracy at high enough levels." *Id.*, *citing United States v. Krout*, 66 F.3d 1420, 1425 (5th Cir. 1995).

Similar to *Bankston*, the application here notes that federal agents had been using a confidential source, but explained that further use may compromise the CS and tip-off the entire criminal organization. Affidavit ¶ 65, Opp., Ex. A at 26. The application explains how an undercover agent would not be able to infiltrate the organization and learn about the highest levels of its operation. Affidavit ¶ 66, Opp., Ex. A at 27. It additionally explains how physical surveillance would be impossible, or at best, fruitless. The application notes that the target of the wiretap lives at a dead-end and did not have alternative avenues to enter or exit, suggesting that physical observation would be obvious. Affidavit ¶ 56, Opp., Ex. A at 22-23. The affiant also stated that the neighborhood would be a dangerous location for observation by an officer, and conducting any trash searches would similarly be dangerous and potentially disruptive of the investigation. Affidavit ¶¶ 59-62, Opp., Ex. A at 35-36. This Court finds that, similar to *Bankston*, the following assertions within the affidavit submitted to support the wiretap warrant adequately allege the necessity of the wiretap, and Judge Vance indeed was correct in finding that no other means were available to determine the high-level workings of this conspiracy.

**E.  Failure to Use Minimization Techniques**

The Defendant argues that the Government failed to properly minimize intercepted conversations and therefore the intercepts should be suppressed.  The Defendant argues that "many calls and conversations that were recorded without regard to the minimization requirement, including conversations concerning private, personal, and family matters that are in no way connected to illegal or criminal conduct" because the agents "failed to show a high regard for the right of privacy of" the Defendant and others.  Mot. at 10.   Indeed, the relevant statute provides:

> Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter, and must terminate upon attainment of the authorized objective, or in any event in thirty days. In the event the intercepted communication is in a code or foreign language, and an expert in that foreign language or code is not reasonably available during the interception period, minimization may be accomplished as soon as practicable after such interception.

18 U.S.C.A. § 2518.  However, the minimization requirement is not strict.  As stated by the Fifth Circuit:

> Although 18 U.S.C. § 2515 requires minimization, it does not "require[ ] government agents to avoid intercepting all nonrelevant conversations when conducting a wiretap investigation."  On the contrary, the practical necessities of conducting a wiretap may, in some circumstances, inevitably lead to the interception of some conversations outside the scope of the wiretap order.

*United States v. Brown*, 303 F.3d 582, 604 (5th Cir. 2002).

In this case, the Defendant has raised no challenge to the Government's minimization specific enough to raise any specter of impropriety.  The Government's wiretap application stated that it would comply with all relevant minimization requirements.   Affidavit ¶ 72, Opp., Ex. A at 41-42.  Judge Vance's order approving the wiretap application similarly stated that the

Government must use relevant minimization techniques. Order at 6, Opp., Ex. A at 49. The directions by Assistant United States Attorney Kevin Boitmann to monitoring agents included two pages of detailed instructions on minimization. Opp., Ex. C at 2-3. The Defendant has not raised any specific challenge to these minimization instructions or to their utilization herein. In order to successfully bear his burden of proof to seek suppression, "[D]efendant[] must at least allege particular facts which would tend to indicate some government impropriety," but "general, conclusory allegations based upon mere suspicions do not entitle a defendant to have evidence suppressed." *De la Fuente,* 548 F.2d at 533 (citations omitted). There being no allegation that the Government failed to minimize privileged or irrelevant conversations, this Court has no means to determine whether the Defendant is entitled to any remedy. Therefore, this ground for suppression will be denied.

### III. CONCLUSION

For the reasons provided herein, accordingly

**IT IS ORDERED** that the Defendant's Motion to Suppress Wiretap Evidence is **DENIED.**

New Orleans, Louisiana, this __21st__ day of April, 2008.

```
_____
     STANWOOD R. DUVAL, JR.
   UNITED STATES DISTRICT JUDGE
```

13